IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

---

RICHARD S.,

          Petitioner,

v.

SHARON CARPINELLO, RN, Ph.D,
      Commissioner, New York State
      Office of Mental Health,

JAMES SPOONER, Executive Director, St.
      Lawrence Psychiatric Center,

          Respondents.

Civil Action No.
9:04-CV-1403 (DNH/GHL)

---

APPEARANCES:

FOR PETITIONER:

MENTAL HYGIENE LEGAL SERVICE
Second Judicial Department
170 Old Country Road
Mineola, New York 11501

FOR RESPONDENT:

HON. ANDREW M. CUOMO
Office of the Attorney General
State of New York
The Capitol
Albany, New York 13224

GEORGE H. LOWE
U.S. MAGISTRATE JUDGE

OF COUNSEL:



SIDNEY HIRSCHFELD, ESQ.
DENNIS B. FELD, ESQ.
MICHAEL D. NEVILLE, ESQ.



KRISTA A. ROCK, ESQ.
Assistant Attorney General

LISA ULLMAN, ESQ.
Assistant Attorney General

## REPORT-RECOMMENDATION AND ORDER[1]

In July 1980, Petitioner Richard S. ("Petitioner"), who was at the time on probation for manslaughter, stabbed a 15-year old boy three times.  *In the Matter of David B.*, 97 N.Y.2d 267, 273 (N.Y. 2002).  Petitioner was adjudicated not responsible by reason of mental disease or defect and has been confined ever since.  *Id*. at 274.  He is currently confined at St. Lawrence Psychiatric Center, a non-secure facility.  Petitioner seeks a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254 on the grounds that the New York courts unreasonably failed to extend and apply the United States Supreme Court's holding in *Kansas v. Crane*, 534 U.S. 407 (2002) to his case.  For the reasons discussed below, I recommend that the Petition be denied and dismissed.

## I. **Background**

### A.    New York's Statutory Scheme

Under New York's Criminal Procedure Law ("CPL"), when a criminal defendant enters a plea of not responsible by reason of mental  disease or defect ("NRRMDD"):

> the New York Supreme Court orders a psychiatric examination "to determine the defendant's current mental condition and then holds a hearing as to the appropriate disposition" ...
>
> Based on its findings at this hearing, the New York Supreme Court must then place the defendant in one of three categories, or "tracks." If the defendant is determined, by a preponderance of the evidence, to suffer from a "dangerous mental disorder," as that term is defined under New York law, he must be committed to a secure psychiatric facility.  Defendants in this position are

---

[1]    This action has been referred to the undersigned by District Court Judge David N. Hurd for a report and recommendation pursuant to 28 U.S.C. § 636(b) and Northern District of New York Local Rule 72.3(c).

colloquially referred to as "track one" defendants.

If the NRRMDD defendant is determined not to be suffering from a "dangerous mental disorder," but nonetheless to be "mentally ill," as that term is defined under New York law, he is remanded to the custody of the State Commissioner of Mental Health (the "Commissioner") subject to an "order of conditions" authorized by the CPL, but his commitment is then governed by the civil commitment provisions of New York Mental Hygiene Law ("MHL") ... These NRRMDD defendants, who, in the court's view, require inpatient treatment for their mental illness but who do not suffer from a "dangerous mental disorder," are referred to as "track two" defendants.

Finally, NRRMDD defendants who are adjudged by the court to be neither "mentally ill" nor suffering from a "dangerous mental disorder" are referred to as "track three" defendants. Such defendants must be either discharged unconditionally or discharged subject to an order of conditions, which generally requires them to enroll in out-patient psychiatric treatment.

*Ernst J. v. Stone*, 452 F.3d 186, 189-90 (2d Cir. 2006) (citations omitted).

A track one defendant's initial commitment lasts for six months.  N.Y. Crim. Proc. Law § 330.20(1)(f) (McKinney 2005).  After the initial six-month period, a track one defendant may be recommitted under a "first retention order" for one year.  N.Y. Crim. Proc. Law § 330.20(1)(g) (McKinney 2005).  After the expiration of the first retention order, a track one defendant may be recommitted under a "second retention order" and "subsequent retention orders," each of which lasts not longer than two years.  N.Y. Crim. Proc. Law § 330.20(1)(h-i) (McKinney 2005).

If a track one defendant's mental state improves sufficiently, he may be moved to a non-secure facility.  However, such a defendant continues to be governed by the restrictive procedures of the Criminal Procedure Law rather than by New York's civil commitment

3

provisions. *Jamie R. v. Consilvio*, 6 N.Y. 3d 138, 143 (N.Y. 2006). Such a defendant will continue to be confined in a non-secure facility pursuant to subsequent retention orders if the court determines that he is (1) mentally ill; and (2) dangerous. *In re David B.*, 97 N.Y.2d 267 (N.Y. 2002). The term "mentally ill" has "three distinguishing characteristics: (1) the illness is of a kind that requires inpatient care and treatment, (2) care and treatment of the illness are essential to the defendant's welfare, and (3) because of impaired judgment the defendant does not understand the need for such care and treatment." *Id*. Regarding the term "dangerousness," the New York Court of Appeals has held that:

> (a)lthough a finding of dangerousness may be supported by evidence of violence, dangerousness is not coterminous with violence. In *Jones v United States*, the (United States) Supreme Court observed that it has never held that violence is a prerequisite for a constitutional confinement. Indeed the *Jones* Court noted that, aside from any threat of violence, petitioner's continued confinement "may well rest" on his history of suicidal tendencies and his inability to cope with release.
>
> Apart from evidence of violence, retention of an insanity acquittee in a non-secure facility is justified where the State shows by a preponderance of the evidence that continued care and treatment are essential to the physical or psychological welfare of the individual and that the individual is unable to understand the need for such care and treatment. Retention also may be supported by the need to prepare for a safe and stable transition from non-secure commitment to release. Thus, in addition to recent acts of violence and the risk of harm to the defendant or others that would be occasioned by release from confinement, a court may consider the nature of the conduct that resulted in the initial commitment, the likelihood of relapse or a cure, history of substance or alcohol abuse, the effects of medication, the likelihood that the patient will discontinue medication without supervision, the length of confinement and treatment, the lapse of time since the underlying criminal acts and any other relevant factors that form a part of an insanity acquittee's psychological profile.

*Id.* at 278-79.

    B.    <u>State Court Proceedings</u>

In July 1980, Richard S. met a 15-year-old male, and took him to his home in Queens. After a night of sexual relations, appellant stabbed the young man with a pocket knife three times in the chest and back as he slept. Richard S. turned himself in and was charged with numerous crimes, including attempted murder in the second degree.

At the time of his arrest, Richard S. was serving a five-year probationary manslaughter sentence for the 1978 killing of another young man who he had stabbed to death after sex ...All the examining psychiatrists concurred that, at the time of the (July 1980) stabbing, Richard S. lacked the capacity to appreciate the nature and consequences of his actions and that he was in need of institutional treatment because of the danger he presented to himself and others. Upon an adjudication of not guilty by reason of mental disease or defect, he was committed to the custody of the Commissioner of Mental Health (as a track one defendant).

(Petitioner) remained at (Mid-Hudson Psychiatric Center, a secure facility) until 1986. In 1986, while undergoing hypnotic therapy, Richard S. allegedly recalled bludgeoning a third young man to death in an alley in Queens. (He) was tried and convicted of that murder and sentenced to a prison term of 25 years to life. (The New York Court of Appeals), focusing on the unreliability of hypnotically induced statements, in 1991 reversed that conviction.

Following dismissal of the murder indictment, Richard S. was transferred back to and "retained" at MHPC under a subsequent retention order ...stemming from the 1980 stabbing incident.

In February 1994, (the) Supreme Court ordered the transfer of Richard S. to a non-secure facility...Despite evidence of satisfactory progress in treatment and the beginning of a romantic relationship with a fellow patient, in 1996 appellant was found to be in possession of violent pornographic materials. At about the same time an informant was reputed to have alleged that appellant was planning an escape ... in order to exact revenge upon a Queens Assistant District Attorney for a prior prosecution. (The) Supreme Court returned Richard S. to secure commitment at MHPC.

*In re David B.*, 97 N.Y.2d 267, 273 -275 (N.Y. 2002)

In October 1998, the Commissioner of Mental Health applied for a subsequent retention order.   That application was litigated to the New York Court of Appeals.  As a result of the litigation, Petitioner was sent to his current placement, a non-secure facility in St. Lawrence County.  *In re David B.*, 97 N.Y.2d 267 (N.Y. 2002); (Dkt. No. 3 at 6); (Dkt. No. 12 at 9).

The Commissioner of Mental Health's October 2000 and October 2002 applications for subsequent retention orders are the subject of this *habeas* petition.  The applications were combined for hearing in County Court due to delays arising from litigation of the October 1998 application.  After a four day hearing, the County Court found that Petitioner remained mentally ill and dangerous and that continued retention in a non-secure facility was warranted. (Dkt. No. 3, Ex. A.)

Petitioner appealed to the Appellate Division, Third Department.  (Dkt. No. 3, Ex. C.) Petitioner argued, in part, that the United States Supreme Court's opinion in *Kansas v. Crane* required the Commissioner to prove, as a precondition to continued confinement,  that Petitioner (1) was mentally ill; (2) was dangerous; *and* (3) suffers "serious difficulty in controlling his behavior."  (AR 04 at 61-62.)

The Third Department disagreed with Petitioner .  Regarding Petitioner's *Kansas v. Crane* argument, the Third Department stated that Petitioner's "contention that his continued confinement is improper because he was not shown to have any 'volitional impairment' or difficulty controlling his behavior, has been considered and found to be without merit."  (Dkt. No. 3, Ex. D.)  The Third Department affirmed the County Court, finding that the County

6

Court's findings of mental illness and dangerousness were "supported by a strong preponderance of the credible evidence." *Id.*

Petitioner filed a notice of appeal as of right in the New York Court of Appeals.  (Dkt. No. 3, Ex. E.)  Petitioner argued that due process required the New York courts to extend the holding of *Kansas v. Crane* to his case.  (Dkt. No. 3, Ex. F.)  On September 9, 2004, the Court of Appeals dismissed Petitioner's appeal, "upon the ground that no substantial constitutional question is directly involved."  (Dkt. No. 12, Ex. 10.)

C.    Proceedings in this Court

Petitioner filed the present petition in this Court on December 6, 2004.  (Dkt. No. 1.) Respondents filed their response on April 22, 2005.  (Dkt. No. 12.)  The Court granted Petitioner leave to file a reply.  (Dkt. No. 15.)  Petitioner filed the reply on May 27, 2005. (Dkt. No. 16.)

**II. Discussion**

A.  Standard of Review

Petitioner, who contends that he has been improperly recommitted after pleading NRRMDD,  may properly petition for *habeas corpus*.  *See Ernst J. v. Stone*, 452 F.3d 186 (2d Cir. 2006); *Hunter v. Gipson*, __F. Supp. 2d ___, No. 04-CV-0655 VEB, 2008 WL 383513, at *3 (W.D.N.Y. Feb. 14, 2008) .  Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Petitioner may obtain habeas relief by showing that the state court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court."  28 U.S.C. § 2254(d)(1) (2006); *Carey v. Musladin*, 127 S. Ct. 649, 653 (2006); *Campbell v. Burgess*, 367 F. Supp. 2d 376, 380

(W.D.N.Y. 2004).  A court 'unreasonably applies' clearly established federal law when it identifies the correct governing legal principle from the Supreme Court's decisions but "unreasonably refuses to extend that principle to a new context where it should apply." *Williams v. Taylor*, 529 U.S. 362, 407 (2000).  Although "some increment of incorrectness beyond error is required" in order to grant a federal habeas application, that increment "need not be great; otherwise, habeas relief would be limited to state court decisions 'so far off the mark as to suggest judicial incompetence.'" *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000); *see also Hawkins v. Costello*, 460 F.3d 238, 243 (2d Cir. 2006).  The state court's determination of a factual issue is presumed to be correct, and the petitioner has the burden of rebutting that presumption by clear and convincing evidence.  28 U.S.C. § 2254 (e)(1) (2006); *DeBerry v. Portuondo*, 403 F.3d 57, 66 (2d Cir. 2005), *cert. denied* 546 U.S. 884 (2005); *Boyette v. Lefevre*, 246 F.3d 76, 88 (2d Cir. 2001).

   B.   The State Courts Did Not Unreasonably Refuse to Extend *Kansas v. Crane* to Petitioner's Case

   Petitioner argues that the state courts unreasonably refused to extend the United States Supreme Court's holding in *Kansas v. Crane* to his case.  Petitioner argues that *Crane*, when read together with other Supreme Court precedents regarding civil commitment of insanity acquittees, requires the state to prove that Petitioner (1) is mentally ill; (2) is dangerous; *and* (3) has serious difficulty in controlling his behavior.  (Dkt. No. 3 at 31-38.)  Having reviewed the relevant Supreme Court precedent, I have concluded that Petitioner's argument is without merit.

   In *Addington v. Texas*, 441 U.S. 418 (1979), the United States Supreme Court held that,

in civil commitment proceedings,  due process requires states to prove by clear and convincing evidence that the person sought to be committed is (1) mentally ill; and (2) requires hospitalization for his own welfare and the protection of others.

In *Jones v. United States*, 463 U.S. 354 (1983), the Supreme Court determined the appropriate burden of proof for commitment when a criminal defendant pleads not guilty by reason of insanity.  In *Jones*, an insanity acquittee argued that, under *Addington*, the District of Columbia was required to prove by clear and convincing evidence that he was mentally ill and dangerous before committing him.  The United States Supreme Court held that insanity acquittees may be committed without proof by clear and convincing evidence of mental illness and dangerousness.  The Supreme Court noted that the insanity verdict itself meets the state's burden because it "establishes two facts: (i) the defendant committed an act that constitutes a criminal offense, and (ii) he committed the act because of mental illness."  *Jones*, 463 U.S. at 363.

The Supreme Court considered release standards for insanity acquittees in *Foucha v. Lousiana*, 504 U.S. 71 (1992).  In that case, the Supreme Court considered a Louisiana statute that allowed continued confinement of an insanity acquittee based merely on a finding of dangerousness.  An insanity acquittee who was acknowledged to have recovered from his mental illness challenged his continued confinement under the statute.  The Supreme Court held that the statute violated due process because""(t)he committed acquittee is entitled to release when he has recovered his sanity or is no longer dangerous. i.e. the acquittee may be held as long as he is *both* mentally ill and dangerous, but no longer."  *Foucha*, 504 U.S. at 77 (emphasis added).

9

Since *Foucha*, the Supreme Court has not addressed the standards for the commitment and retention of insanity acquittees.  However, the Supreme Court has twice addressed the standards for commitment of prisoners classified as sexually violent predators.  *Kansas v. Hendricks*, 521 U.S. 346 (1997); *Kansas v. Crane*, 534 U.S. 407 (2002).

Both *Hendricks* and *Crane* concerned Kansas' Sexually Violent Predator Act, which established

> a civil commitment procedure for the long-term care and treatment of the sexually violent predator. The Act defined a "sexually violent predator" as:
>
> "any person who has been convicted of or charged with a sexually violent offense and who suffers from a mental abnormality or personality disorder which makes the person likely to engage in the predatory acts of sexual violence."
>
> A "mental abnormality" was defined, in turn, as a "congenital or acquired condition affecting the emotional or volitional capacity which predisposes the person to commit sexually violent offenses in a degree constituting such person a menace to the health and safety of others."

*Hendricks*, 521 U.S. at 351-52 (citations omitted).

In *Hendricks*, a defendant challenged the Act, arguing in part that the Act violated due process because its definition of "mental abnormality" did not satisfy the "mental illness" requirement for civil commitment set forth by the Supreme Court in *Addington, Jones* and *Foucha*.  The Supreme Court noted that

> (w)e have sustained civil commitment statutes when they have coupled proof of dangerousness with proof of some additional factor, such as 'mental illness' or 'mental abnormality.'  These added statutory requirements serve to limit involuntary civil confinement to those who suffer from a volitional impairment rendering them dangerous beyond their control. The Kansas Act is

10

> plainly of a kind with these other civil commitment statutes: It
> requires a finding of future dangerousness, and then links that
> finding to the existence of a "mental abnormality" or "personality
> disorder" that makes it difficult, if not impossible, for the person to
> control his dangerous behavior.

*Hendricks*, 521 U.S. at 358 (citations omitted).  The Supreme Court held that the Act thus

satisfied due process by requiring a finding of (1) dangerousness; and (2) mental illness (or

"mental abnormality") before the state could permissibly civilly commit a sexually violent

predator.

Five years later, the Supreme Court addressed the Kansas Act again in *Kansas v.*

*Crane*, 534 U.S. 407 (2002).  Based on the language from *Hendricks*, quoted above, the Court

held that in order for a commitment under the Act to satisfy due process, the state court was

required, in addition to finding that the alleged predator was "dangerous" and suffered from a

"mental abnormality" or "personality disorder," to find that the alleged predator had "serious

difficulty in controlling behavior."  *Crane*, 534 U.S. at 413.

Although *Crane* added an additional due process requirement for cases involving

sexually violent predator statutes, nothing in the *Crane* opinion indicates that the United States

Supreme Court intended to add a third prong to the "mentally ill" and "dangerous" test for

insanity acquittees enunciated in *Jones* and *Foucha*.  Significantly, the *Crane* opinion

discussed neither *Jones* nor *Foucha*[2].  Surely if the Supreme Court had intended to refine or

overrule its insanity acquittee precedents, it would have done so explicitly.  Petitioner has not

cited, and the undersigned has not found, any federal or New York State cases extending the

---

[2]      The Court cited *Jones* and *Foucha* each once in passing for minor points of
law.

*Crane* holding to the insanity acquittee context[3]. Even the *Crane* dissent, in which Justices Scalia and Thomas argued that the *Crane* majority's reading of *Hendricks* was "simply not ... permissible" and decried the majority's disregard for precedent, did not suggest that the majority opinion changed settled law regarding insanity acquittees.

Supreme Court precedent discussing the rights of insanity acquittees requires states to prove only that the acquittee is (1) dangerous; and (2) mentally ill in order for a commitment to satisfy due process. Neither the *Crane* opinion itself nor any later case applying *Crane* has extended the requirement of finding "serious difficulty in controlling behavior" to the insanity acquittee context. Accordingly, the state courts did not unreasonably refuse to extend *Kansas v. Crane* to Petitioner's case[4].

---

[3]     Petitioner notes that one class of persons eligible for commitment under the Kansas Act was persons found not guilty by reason of insanity of a sexually violent offense. He argues that, accordingly, *Crane* applies in the insanity acquittal context. (Dkt. No. 16 at 3-4). This argument is without merit. The fact that an insanity acquittee would be entitled to the protections of *Crane* in the event that he was also charged with being a sexually violent predator is irrelevant here. Petitioner has not been charged with being a sexually violent predator. Nothing in the *Crane* opinion indicates that it extended to insanity acquittees who were *not* alleged to be sexually violent predators.

[4]     Because I find that the state was not required to prove that Petitioner has "serious difficulty in controlling behavior," I will not address in any detail Petitioner's argument that the "overwhelming weight of the evidence adduced at trial established that Petitioner does not suffer from serious difficulty in controlling his behavior." (Dkt. No. 3 at 39-41.) I note, however, that there was evidence before the state courts that Petitioner is unable to control his anger, has a tendency for substance abuse, and could well re-offend if substance abuse triggered his subconscious sadistic fantasies. Although the state courts also received evidence that Plaintiff was no longer dangerous, the state courts rejected that evidence as 'affected by personal biases.' (Dkt. No. 12, Ex. 6 at 3-6.) The state court's determination of a factual issue is presumed to be correct, and the petitioner has the burden of rebutting that

**WHEREFORE**, based upon the foregoing, it is hereby

**RECOMMENDED**, that the petition for a writ of *habeas corpus* (Dkt. No. 1) be

**DENIED** and **DISMISSED**.  However, I note that because the issue presented by Petitioner

has apparently not been addressed by any other federal court, "the issues presented were

'adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 483

(2000).  It is therefore recommended that a certificate of appealability be granted.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written

objections to the foregoing report. Such objections shall be filed with the Clerk of the Court.

**FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL**

**PRECLUDE APPELLATE REVIEW**. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e);

*Roldan v. Racette*, 984 F.2d 85 (2d Cir.1993) (*citing Small v. Sec'y of Health and Human*

*Servs.*, 892 F.2d 15 (2d Cir.1989)).

Dated: March 17, 2008
      Syracuse, New York

George H. Lowe
United States Magistrate Judge

---

presumption by clear and convincing evidence.  28 U.S.C. § 2254 (e)(1)
(2006); *DeBerry v. Portuondo*, 403 F.3d 57, 66 (2d Cir. 2005), *cert. denied*
546 U.S. 884 (2005); *Boyette v. Lefevre*, 246 F.3d 76, 88 (2d Cir. 2001).
Petitioner has not rebutted the presumption.